# JEDEDIAH LATHROP

*vs.*

# THE UNION PACIFIC RAILWAY COMPANY.

1. A foreign corporation cannot be sued in this court when it has no place of business and no agent within the District.
2. The Act of Congress incorporating the Union Pacific Railway and authorizing it to sue and be sued in any court of law or equity within the United States, and tending aid to it and all other companies which might accept certain terms and conditions recited in the statute, does not also render such other companies as accept the benefit of the statute liable to be sued in the same manner.

In Equity.   No. 1299.   Decided October 4, 1870.

APPEAL from a decree in equity sustaining a plea to the jurisdiction.

THE FACTS are sufficiently stated in the opinion.

Messrs. BRENT & PHILLIPS and W. S. Cox for plaintiff.

Messrs. BUCHANAN & GWINN for defendant.

It is manifest that this court has no jurisdiction of this case, because the defendant was not an inhabitant of the District of Columbia or found therein at the time of serving the writ issued in this case, but was chartered by the State of Kansas, as stated in complainant's bill, and therefore the plea to the jurisdiction must be sustained and the complainant's bill dismissed with costs. Act of Congress, February 22, 1867.

The Supreme Court of the District of Columbia has the power and jurisdiction possessed by the late Circuit Court for the District of Columbia.   Act March 3, 1863, Sec. 3.

What were the powers and jurisdiction of this court which were thus transferred to this court?

By the Act of February 27, 1801, 2 Stat., 103, the Circuit Court of the District of Columbia had " all the powers

7DC—8

vested by law in the Circuit Courts and judges of the Circuit Courts of the United States."

It had (Section 5 of the same act) jurisdiction "of all cases in law and equity between parties, both or either of whom shall be residents of, or found within said District at the time of serving the writ."

But it was provided (Section 6 of same act) "that no action or suit shall be brought before said court by any original process against any person who shall not be an inhabitant of or found within said District at the time of serving the writ."

This act of February 27, 1801, defined the powers and jurisdiction of the Circuit Court for the District of Columbia. U. S. *vs.* Williams, 4 Cranch C. C. 376; Kendall *vs.* U. S., 12 Peters, 627; Decator *vs.* Paulding, 14 Peters, 601.

The grant of jurisdiction made to the Circuit Court for the District of Columbia did not differ, so far as this case is concerned, from the grant of jurisdiction to the Circuit Courts of the United States, made by the act of September 24, 1789, Sec. 11, 1 Stat., 78.

This section declares that "no civil suit shall be brought before either of said courts against an inhabitant of the United States, by any original process, in any other District than that whereof he is an inhabitant, or in which he shall be found at the time of serving the writ."

The primary question upon the whole pleadings is, whether this defendant was an inhabitant of the District of Columbia or capable of being found within said District.

In the case of the Bank of Augusta *vs.* Earle, 13 Peters, 588, the Supreme Court decided "that a corporation can have no legal existence out of the boundaries of the sovereignty by which it is created. * * * It must dwell in the place of its creation and cannot migrate to another sovereignty."

" The persons who act under these faculties, and use this corporate name, may be justly presumed to be resident in the State which is the necessary *habitat* of the corporation, and where alone they can be made subject to suit; and should be estopped in equity from averring a different domicile, as against those who are compelled to seek them there, and can find them there and nowhere else." Marshall *vs.* Baltimore and Ohio Railroad Co., 16 Howard, 328.

" The legal entity or person, which exists by force of law, can have no existence beyond the limits of the State, or sovereignty, which brings it into life, and endues it with its faculties and powers." Ohio and Mississippi Railroad Co. *vs.* Wheeler, 1 Black, S. C. R., 297; Covington Drawbridge Co. *vs.* Sheppard, 20 Howard, 233; Louisville Railroad Co. *vs.* Letson, 2 Howard, 558.

Now, if a corporation can have no legal existence out of the boundaries of the sovereignty by which it is created, and must dwell in the place of its creation, this defendant can not possibly be an inhabitant of this District, or be found within this District, unless it can be shown that it has been *incorporated* by a law of Congress, operating within this District.

Now, what essential acts are necessarily performed by a sovereignty before it can be said to give existence to a corporation?

It must authorize such a body to have perpetual succession, to sue and be sued, implead and be impleaded, grant and receive by its corporate name, to have a common seal, to make by-laws, to have the power of amotion or removal of members. Angell & Ames on Corp., Ed. 1861, Sec. 110.

No body of men can be held to be incorporated under the law of any locality, unless these attributes are conferred upon the named body by the law of that locality.

In what relation does the defendant stand to this District?

It was not incorporated by the acts of Congress operating within this District, although authorized by such acts to construct its road in the manner and along the route specified therein, for this route was far beyond the bounds of the District of Columbia and the jurisdiction of this court.

It must be perfectly apparent to this court that this defendant cannot hold meetings of its president and directors *outside of the limits within which it was authorized to fulfill its specific objects.* Angell & Ames on Corp., Ed. 1861, Sec. 104.

It need not certainly be repeated that it is impossible that a corporation can be found within the District, which is not, as such, capable in law of holding, within the District, a meeting or assemblage of its aggregate parts.

The fact that a corporation carries on business in a different State or district from that in which it is created, and has agents and employees in such other locality, and there makes contracts and conducts its business, does not make it a resident or inhabitant of such other locality. Blackstone Manufacturing Co. *vs.* Blackstone, 13 Gray, 488; Day *vs.* Newark India Rubber Co., 1 Blatch. C. C., 628.

This last case is precisely adverse to the right of the plaintiff to sue the defendant in this court.

It has always been found necessary to provide by express legislation for giving jurisdiction even to *State* courts, having common law powers over foreign corporations, having agents within the State, and there exercising some of their franchises.

This is done in Maryland by Art. 75, Sections 100, 101 and 102 of the Public General Laws of that State.

It is done in Pennsylvania by the Act of March 21, 1849. Brightley's Purdon's Digest, 199.

It is done in New York under the Act of 1849, Chap. 107.

All these acts were necessary in order to make service upon an agent of a foreign corporation, doing business within these respective States, sufficient to bring the corporation itself before the court.

This was necessary, as has been said, even in cases of courts having common law jurisdiction, and to the process of which every resident, or inhabitant, was necessarily subjected.

How can it be imagined that a different rule obtains in the District of Columbia, and that such legislation, necessary everywhere else, is unnecessary here?

We submit that the plea to the jurisdiction should be sustained, and the bill dismissed with costs.

Mr. Justice MAC ARTHUR delivered the opinion of the Court:

This case is brought here by an appeal from a decree sustaining a plea to the jurisdiction. In the bill of complaint it is alleged that the name of the Leavenworth, Pawnee and Western Railroad Company was changed by a law of the State of Kansas (where it was chartered by an act of the legislature) to that of the Union Pacific Railroad Company, Eastern Division, and by that name it is made a defendant to this action; but it is claimed to be the same corporation in its rights and liabilities as it was previously to such change in its name. The bill further shows that by act of Congress, approved July 1, 1862, and the subsequent act amending the same, the Union Pacific Railroad Company was incorporated, and was authorized to construct its line of road through the Territories of the United States, and to receive land grants and Government bonds to aid in the construction thereof. The allegations respecting the defendant are, that by the same acts of Congress it was authorized to construct its line of road through the adjacent Territories, and was to receive the same kind of Government aid in its construction, and upon the same terms and conditions in all respects as were annexed to the grants to the Union Pacific Railroad; and the first section of the act declares that this latter company " shall be able to sue and be sued, plead and be impleaded in all courts of law and equity within the United States." These are all the facts

necessary to be stated as respects the bill in order to raise the question of jurisdiction, unless it be the additional facts that the defendant has accepted the bounties of this act, and has constructed a portion of the road therein contemplated.

The defendant pleaded to the jurisdiction of the court, stating that it was not an inhabitant of this District, but was an inhabitant of the State of Kansas, and that it was not found within this District when the subpœna issued in the cause; that it was not doing business in this District, and has never had any place of business therein, or any agent or person conducting its business within the said District. To this plea a demurrer has been interposed, or at least the plea is to be considered as demurred to. Upon this issue the question arises whether the defendant, which is a corporation, chartered by and existing under the laws of the State of Kansas, is capable of being sued here, although it has no place of business and no agent within the District of Columbia. It is now settled beyond all controversy by repeated decisions of the Supreme Court of the United States that a corporation can have no legal existence out of the boundaries of the sovereignty by which it was created, and this doctrine has been maintained so long that all reasoning on the general principal is unnecessary. Bank of Augusta *vs.* Earle, 13 Peters; Marshal *vs.* Baltimore and Ohio RR. Co., 16 How., 328, 18 How., 404; Ohio and Mississippi RR. Co. *vs.* Wheeler, 1 Black, S. C. R., 297. These and similar decisions not only establish the general doctrine just stated, but show that a corporation can only be sued in a different State from that in which it was created by express legislation authorizing such suits against foreign corporations having agents within the State conducting the general business for which it was organized. This has been done in several of the States, but where there is no such exercise of the franchise and no business agent, a corporation for the purpose of adversary litigation is to be con-

sidered an inhabitant of the State under whose laws it exists, and is not capable of being sued elsewhere.

According to this principle it is manifest that this court has no jurisdiction of the defendant, which is strictly a State institution existing under the laws of Kansas, and the plea to the jurisdiction must be sustained unless the suit is authorized by some provision of the statute.

This power, it is said, is given in the Act of Congress already referred to incorporating the Union Pacific Railroad Company.

That act, as we have seen, provided that this last-named company can sue, and be sued, in all courts of law and equity within the United States, and it is argued that as the defendant has accepted the aid of the same statute it can also be sued in any court of law or equity within the United States, as it accepted such aid upon the same terms and conditions as were imposed upon the Union Pacific Railroad Company in the law.

But we are of opinion that the defendant cannot be subjected to this construction of the law. It is certainly true that the defendant accepted the grants upon the conditions specified in the statute, but we are quite clear that the remedies of suing and being sued were not in any sense affected by these terms. The conditions referred to in the act are expressly such as relate to "the construction of the railroad." The same privileges are extended to other railroad corporations created by the State laws of California and Missouri, and each of the companies are required to file their acceptance of the conditions of the act in the Department of the Interior within six months after its passage.

Now, these conditions "for the construction of the railroad" are quite distinct from the general grant of franchises by which this defendant was clothed by the legislature of Kansas.

There are franchises of a general character inseparable from every corporation, and which are recognized by all

the laws of Congress and of the different States. To have a corporate name, to have perpetual succession, to sue and be sued, to hold property, to have a common seal, and to make by-laws, are the general and necessary attributes of these bodies. Angel & Ames on Corporations, 83. We find these incidents in the Congressional charter of the Union Pacific Company, and they are no doubt embraced in the defendants' charter from the State of Kansas.

In addition to these general powers, Congress has given the right of way to these companies over the public lands and has also offered them other subsidies upon certain conditions as to the mode of constructing the roads; as for instance, it prescribes the time within which the work is to be done, the manner of securing payment to the United States for the amount of the bonds delivered, and that such bonds shall only be delivered, and such grants of land made, upon the report of commissioners that a certain number of miles have been completed and equipped, and that the companies shall transport mails, troops and munitions of war, supplies and public stores, whenever required to do so by any Department of the Government. Such are some of the conditions which Congress has annexed to its favors, and upon their performance the companies are entitled to the benefits contemplated by the act. It is evident that the condition, so far at least as respects the defendant, are subjoined to the subsidies and do not affect the general franchises of the corporation, and its capacity to sue and be sued, and to have perpetual succession, together with the other powers inseparable from it as a corporation, are neither modified nor enlarged by the conditional terms of the Government bounties.

It is therefore quite clear that the conditions referred to do not affect the right of the defendant to be sued, and as it is a State corporation on well established principles it is only sueable within the territorial limits of the State in which it exists. And inasmuch as it has no place of business and no

business agent conducting its affairs in this District, it is not capable of being found within the jurisdiction of this court. Other considerations of the gravest consequence were presented on the argument, but as we find upon a proper construction of the statute, that the court cannot entertain the suit as to the defendant interposing this plea, we deem it not only unnecessary but more decorous to refrain from an adjudication on points so generally important in a case in which we have no jurisdiction.

*The decree appealed from is affirmed.*